Argued and submitted December 9, 1983, affirmed in part; reversed and remanded in part February 8, appellant Rosenberg's reconsideration and respondent U. S. Natural Resources' reconsideration denied March 30, petitions for review denied May 1, 1984 (297 Or 83)

# U. S. NATURAL RESOURCES, INC.,
*Respondent - Cross-Appellant,*

*v.*

# GRAY et al,
*Appellants - Cross-Respondents,*

*v.*

# ROSENBERG REAL ESTATE EQUITY FUND-I, INC.,
*Respondent - Appellant - Cross-Appellant,*

(A8001-00351; CA A27003)

676 P2d 912

Monica M. O'Brien, Portland, argued the cause for appellants - cross-respondents. With her on the briefs was Gleason, Scarborough & Kretzmeier, Portland.

Charles S. Tauman, Portland, argued the cause for respondent - appellant - cross-appellant. With him on the briefs was Willner, Bennett, Bobbitt, Hartman & Tauman, P.C., Portland.

Peter C. Richter, Portland, argued the cause for respondent - cross-appellant. With him on the briefs was James N. Westwood, William H. Walters, and Miller, Nash, Yerke, Wiener & Hager, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff brought this action for reformation of a lease agreement under which it is the lessee of office space in the 4800 John's Landing Building in Portland. Defendants Gray and Walrod, dba 4728 S. W. Macadam Avenue (the Grays), who owned the building at the time the agreement was executed, were the original lessors. Defendant Rosenberg Real Estate Equity Fund-I, Inc. (Rosenberg) later purchased the building from the Grays, and the Grays' interest in the lease was assigned to Rosenberg. The trial court denied relief on plaintiff's reformation claim, rejected defendants' prayer for attorney fees against plaintiff and awarded Rosenberg $6,000 against the Grays to indemnify Rosenberg for attorney fees it expended in defending the action. The Grays appeal from the denial of the attorney fees they sought from plaintiff and from the award of indemnity to Rosenberg. Plaintiff cross-appeals from the denial of the reformation claim. Rosenberg appeals from the denial of its prayer for attorney fees against plaintiff and cross-appeals from the trial court's refusal to award greater indemnification damages against the Grays. We affirm on the reformation issue, reverse and remand the denial of attorney fees and reverse the indemnity judgment.

Plaintiff and the Grays entered into the lease agreement in August, 1976. At that time, the building was undergoing extensive renovation. The agreement contained an escalation clause under which the lessor was entitled to increase plaintiff's rent to reflect annual increases in operating and maintenance costs over costs for the base year 1977. The agreement specified "real estate taxes and assessments" as one of the expenses included in the computation of increased rent. Due at least in part to the rate of progress on the renovation project and the resulting occupancy level of the building, the real property taxes for improvements increased from $10,548 in 1977 to $48,371 in 1978. As a result, Rosenberg assessed a substantial increase in plaintiff's monthly rent in 1979.

Plaintiff argues that the parties intended the base period for the escalation clause to be the year in which operating expenses stabilized and, because of a mutual mistake or a unilateral mistake by plaintiff induced by the Grays' inequitable conduct, the anticipated stabilization did not

occur in 1977, the year specified in the agreement. On *de novo* review, we agree with the trial court's findings that there was no inequitable conduct by the Grays and that the parties intended 1977 to be the base year. The trial judge also noted that the parties "anticipated that expenses and costs would be normal and stable" in 1977. Plaintiff argues that the incorrectness of that expectation constitutes a mutual mistake sufficient to justify reformation. We disagree, as did the trial court. *See* Restatement (Second) Contracts, § 151, comment *a* (1979). Plaintiff cites cases from other jurisdictions, principally *Aluminum Co. of America v. Essex Group, Inc.,* 499 F Supp 53 (WD Pa 1980), as authority for the contention "that a mutual mistake concerning a 'future development' * * * [supports] the reformation of a lease." Those cases are not controlling and, to the extent they would permit reformation under these facts, they are not persuasive. This was an arm's length transaction. That the consequences proved undesirable to plaintiff does not convince us that the parties did not mean what their agreement says. The court did not err by refusing to reform the lease.[1]

We turn to the Grays' and Rosenberg's appeals from the court's refusal to award them attorney fees against plaintiff. The lease agreement provides that,

> "* * * if any action or suit or appeal thereof is instituted by either party for the enforcement of any covenant contained in this lease, the prevailing party shall recover * * * such attorney's fees as the court may adjudge reasonable * * *."

*See* ORS 20.096. Plaintiff argues that that provision is inapplicable, because the action is not one to enforce the terms of the lease, but is one "to conform the writing to an underlying agreement." Therefore, according to plaintiff, "the litigation is not, and was not, 'an action for the *enforcement* of a covenant' of the lease," within the meaning of the attorney fee provision. (Emphasis plaintiff's.)

The Grays and Rosenberg rely on *Webb v. Culver,* 265 Or 467, 509 P2d 1173 (1973). In that case, the prevailing plaintiffs in a suit to reform a land sale contract sought

---

[1] Plaintiff's notice of cross-appeal designates the Grays as adverse parties to the cross-appeal, but does not designate Rosenberg. Because we conclude that plaintiff is not entitled to prevail on the merits, we do not consider whether any reformation remedy would be possible now, given the posture of the parties.

attorney fees under a provision of the contract that attorney fees were recoverable " '[i]n case suit or action is instituted to foreclose this contract or to enforce any of the provisions hereof * * *.' " The court concluded that the suit for reformation was an " 'action or suit on [the] contract' within the meaning of ORS 20.096," 265 Or at 472, and that plaintiffs were therefore entitled to recover attorney fees under the contractual provision. We find no basis for distinguishing the relevant language of the fee provision here from the one in *Webb,* and we conclude that *Webb* is controlling.

■        The basis for the trial court's refusal to award attorney fees against plaintiff is that, in the light of the harsh effect on plaintiff of the denial of reformation, "it would be wrong to burden [plaintiff] further with an attorney's fee." Plaintiff argues that the trial court had discretion whether to award any attorney fees as well as having discretion as to the amounts to be awarded. We do not agree that the court had the option to refuse to award attorney fees on the ground it did. In *Jensen v. Miller,* 280 Or 225, 232, 570 P2d 375 (1977), a suit to reform a land sale contract and a deed, the court stated that "[t]he awarding of attorney fees pursuant to contractual provisions is made mandatory by statute, ORS 20.096." Under the fee provision of the agreement here, the Grays and Rosenberg are entitled to reasonable attorney fees. We remand to the trial court to determine the reasonable amounts and to make an appropriate award.

Both the Grays and Rosenberg assign error to the trial court's award of $6,000 from the former to the latter to indemnify Rosenberg for its attorney fees in connection with the action. The award was made pursuant to an indemnification provision in the agreement by which Rosenberg purchased the property from the Grays. The Grays contend that the provision does not apply; Rosenberg contends that it was entitled to indemnity for the full amount of its attorney fees and that the court erred in awarding only $6,000.[2] We agree with the Grays that the provision is inapplicable.[3]

---

[2] Rosenberg tendered the defense of the action to the Grays, and the tender was refused.

[3] Rosenberg states that "[t]here are no factual issues in dispute, and the interpretation of the indemnity clause is treated as a matter of law."

■      Section 7.11 of the agreement between the Grays and Rosenberg provides:

"Seller agrees to indemnify and hold Purchaser free and harmless from and against any losses, damages, costs or expenses (including attorneys' fees) resulting from any inaccuracy in or breach of any representation or warranty of Seller and any breach or default by Seller under any of Seller's covenants or agreements under this agreement."

Section 5 of the agreement contains "Representations and Warranties of Seller," including:

"[5.1](b) That the documents delivered to Purchaser pursuant to paragraph 3 are true and correct copies, and are in full force and effect, without default by any party.

"* * * * *

"[5.1](g) That Seller knows of no facts nor has Seller misrepresented any fact which would prevent Purchaser from operating the Property after Closing in the normal manner in which similar properties in the area are operated."

Rosenberg argues:

"Section 5.1(b) is defendants-Grays' certification and representation that the leases delivered to defendant-[Rosenberg] pursuant to paragraph 3 of the Agreement are in full force and effect according to their terms. Plaintiff's lawsuit alleged just the opposite. Thus, the indemnity clause was invoked.

"Section 5.1(g) states that defendants-Grays have not misrepresented any fact which would prevent defendant-[Rosenberg] from operating the subject property in the normal manner in which similar properties in the area are operated. Plaintiff's complaint alleged, again, just the opposite — that defendants-Grays, through their agents, had misrepresented the 'escalation clause' of the lease, which misrepresentation, if established, would act to prevent defendant-[Rosenberg] from operating the subject property in the normal manner. The scope of the indemnity clause covered defendant-[Rosenberg's] expense in defending this suit.

"Notwithstanding any specific representations and warranties made in the Agreement, however, plaintiff's complaint clearly alleged that defendants-Grays, through their agents, misrepresented the meaning and effect of the escalation clause. Such a misrepresentation (or the allegation of one) was

sufficient to trigger the indemnity clause. Defendant-[Rosenberg] incurred expense in defending the plaintiff's lawsuit, and such expenses are within the scope of the indemnity clause."

Rosenberg paraphrases paragraph 5.1(b) of its agreement with the Grays as warranting that the lease with plaintiff was "in full force and effect according to [its] terms." The paragraph does not contain the words "according to [its] terms," but provides that the lease and other documents "are in full force and effect, without default by any party." Plaintiff did not allege that the lease was not in full force and effect or that any party was in default. Accordingly, no right to indemnity arose by virtue of paragraph 5.1(b).

Plaintiff's allegation that the Grays made misrepresentations to it about the escalation clause[4] had no nexus with their warranty to Rosenberg that they had not "misrepresented any fact which would prevent [Rosenberg] from operating the Property * * * in the normal manner in which similar properties in the area are operated." Rosenberg does not explain, and we do not discern, how the alleged misrepresentation could have interfered with Rosenberg's operation of the property consistently with normal operations in the area. *See* n 3, *supra*. Plaintiff's allegation did not provide a basis for indemnity under paragraph 5.1(g) of the agreement.

Finally, we do not construe the language "any inaccuracy in or breach of any representation or warranty of [the Grays]" in section 7.11 as giving Rosenberg a right to indemnity for its defense against the allegation that the Grays made misrepresentations *to plaintiff*. We understand the language as referring only to the "Representations and Warranties of Seller," made under section 5 of the agreement, *to Rosenberg as the buyer*. For the reasons noted earlier, Rosenberg's arguments do not convince us that the allegations of plaintiff's complaint involved "any inaccuracy in or breach" of the two "representations and warranties" in section 5 on which Rosenberg relies.

The indemnification provision in the agreement is a narrowly drafted one. It does not apply to *all* expenses incurred by the buyer in connection with litigation arising out

---

[4] That theory of the complaint was not asserted by plaintiff at trial or on appeal.

of the seller's transactions involving the property. None of the specific bases Rosenberg advances for concluding that the provision applies to the expenses it incurred in defending this action appear to be contemplated by the provision's language.

On defendants Gray's and Walrod's appeal, reversed and remanded for award of attorney fees from plaintiff to defendants Gray and Walrod, and judgment for indemnity from defendants Gray and Walrod to defendant Rosenberg reversed; on defendant Rosenberg's appeal, reversed and remanded for award of attorney fees from plaintiff to defendant Rosenberg; affirmed in all other respects.